UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
File No.: 5:21-cv-00179

## CIVIL ACTION COMPLAINT

| | | |
|---|---|---|
| Patricia McElroy and Stephen McElroy, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| AT&T Corporation (successor in interest to Bell Laboratories); | : | |
| Brenntag North America, Inc. (sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.); | : : : : | **JURY TRIAL DEMANDED** |
| Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.); | : : : | |
| Colgate-Palmolive Company; | : | |
| Estee Lauder, Inc.; | : | |
| Johnson & Johnson; | : | |
| Johnson Consumer, Inc., f/k/a Johnson & Johnson Companies, Inc; | : : | |
| Nokia of America Corporation s/b/m to Alcatel-Lucent USA, Inc. s/b/m to Lucent Technologies, Inc., (sued individually and as successor-in-interest to Western Electric Company); | : : : : | |
| Pfizer, Inc; | : | |
| Specialty Minerals, Inc; and | : | |
| Whittaker Clark & Daniels, Inc., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## CIVIL ACTION COMPLAINT


Plaintiffs Patricia McElroy and Stephen McElroy sue the above-named Defendants for

compensatory and punitive damages and allege as follows:

1

## PARTIES

1.      Plaintiffs Patricia McElroy and Stephen McElroy are citizens and residents of Wake County, in the State of North Carolina.

2.      Defendant, **AT&T CORPORATION (successor in interest to BELL LABORATORIES)**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New Jersey.  At all times material hereto, AT&T CORPORATION, (successor in interest to BELL LABORATORIES), developed, manufactured, marketed, distributed and/or sold asbestos-containing Western Electric wire, cables and soldering pads. AT&T CORPORATION (successor in interest to BELL LABORATORIES) has and does business in the State of North Carolina.

3.      Defendant, **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania.  At all times material hereto, BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) was a supplier of asbestos-containing talc.  BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has and does business in the State of North Carolina.

4.      Defendant, **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), was and is a company incorporated under the laws of the State of Delaware with

2

its principal place of business in New Jersey. At all times material hereto, BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) was a supplier of asbestos-containing talc. BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has and does business in the State of North Carolina.

5. Defendant, **COLGATE-PALMOLIVE COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, COLGATE-PALMOLIVE COMPANY developed, manufactured, marketed, distributed and/or sold asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products including, but not limited to, asbestos-containing Cashmere Bouquet talcum powder products. COLGATE-PALMOLIVE COMPANY has and does business in the State of North Carolina.

6. Defendant, **ESTEE LAUDER, INC.,** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, ESTEE LAUDER, INC., developed, manufactured, marketed, distributed and/or sold asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products including, but not limited to, asbestos-containing Estee Lauder Private Collection Perfumed Body Powder talcum powder products. ESTEE LAUDER, INC., has and does business in the State of North Carolina.

7. Defendant, **JOHNSON & JOHNSON,** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times material hereto, JOHNSON & JOHNSON developed, manufactured, marketed, distributed and/or

3

sold asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products including, but not limited to, asbestos-containing Johnson's Baby Powder talcum powder products. JOHNSON & JOHNSON has and does business in the State of North Carolina.

8.      Defendant, **JOHNSON CONSUMER, INC., f/k/a JOHNSON & JOHNSON COMPANIES, INC.,** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times material hereto, JOHNSON CONSUMER, INC., f/k/a JOHNSON & JOHNSON COMPANIES, INC., developed, manufactured, marketed, distributed and/or sold asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products including, but not limited to, asbestos-containing Johnson's Baby Powder talcum powder products. JOHNSON & JOHNSON has and does business in the State of North Carolina. JOHNSON CONSUMER INC., f/k/a JOHNSON & JOHNSON COMPANIES, INC., has and does business in the State of North Carolina.

9.      Defendant, **NOKIA OF AMERICA CORPORATION s/b/m to ALCATEL-LUCENT USA, INC., s/b/m to LUCENT TECHNOLOGIES, INC., (sued individually and as successor-in-interest to WESTERN ELECTRIC COMPANY),** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, NOKIA OF AMERICA CORPORATION s/b/m to ALCATEL-LUCENT USA, INC., s/b/m to LUCENT TECHNOLOGIES, INC., (sued individually and as successor-in-interest to WESTERN ELECTRIC COMPANY), developed, manufactured, marketed, distributed and/or sold asbestos-containing Western Electric wire, cables and soldering pads. NOKIA OF AMERICA CORPORATION s/b/m to ALCATEL-LUCENT USA, INC., s/b/m to LUCENT TECHNOLOGIES, INC., (sued individually and as successor-in-interest to WESTERN ELECTRIC COMPANY) has and does business in the State of North Carolina.

4

10. Defendant, **PFIZER, INC.,** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, PFIZER, INC., was a supplier of asbestos-containing talc. PFIZER, INC., has and does business in the State of North Carolina.

11. Defendant, **SPECIALTY MINERALS, INC.,** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, SPECIALTY MINERALS, INC., was a supplier of asbestos-containing talc. SPECIALTY MINERALS, INC., has and does business in the State of North Carolina.

12. Defendant, **WHITTAKER CLARK & DANIELS, INC.,** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times material hereto, WHITTAKER CLARK & DANIELS, INC. was a supplier of asbestos-containing talc. WHITTAKER CLARK & DANIELS, INC. has and does business in the State of North Carolina.

13. Plaintiffs bring this action for monetary damages as a result of Plaintiff Patricia McElroy contracting an asbestos-related disease. Plaintiff Patricia McElroy was diagnosed with mesothelioma on or about March 12, 2021.

14. Plaintiff Patricia McElroy was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

(a) From approximately 1973 through 1974, Plaintiff Patricia McElroy was exposed to asbestos while employed as a Telephone Installer for Farmer's Telephone Company. In this matter, Patricia McElroy was exposed to asbestos from asbestos-containing wires, cables and soldering pads. The asbestos-containing wires, cables and soldering pads were manufactured, distributed and/or supplied by AT&T

Corporation (successor in interest to Bell Laboratories) and Nokia of America Corporation s/b/m to Alcatel-Lucent USA, Inc. s/b/m to Lucent Technologies, Inc. (sued individually and as successor-in-interest to Western Electric Company). From approximately 1957 through 1975, Plaintiff Patricia McElroy was exposed to asbestos through her personal, daily use of asbestos-containing Cashmere Bouquet Talcum Powder, Johnson's Baby Powder and Estee Lauder Private Collection Perfumed Body Powder products. The asbestos-containing talc in Cashmere Bouquet Talcum Powder, Johnson's Baby Powder and Estee Lauder Private Collection Perfumed Body Powder products was supplied by Brenntag North America, Inc. (sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Pfizer, Inc., Specialty Minerals, Inc., and/or Whittaker Clark & Daniels, Inc. Plaintiff Patricia McElroy's regular and frequent use of Cashmere Bouquet Talcum Powder, Johnson's Baby Powder and Estee Lauder Private Collection Perfumed Body Powder products generated asbestos-containing dust and exposed Plaintiff Patricia McElroy to respirable asbestos fibers.

15.     At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said Defendants.

16.     At all material times, the Defendants manufactured, designed, distributed, sold, supplied, and/or otherwise placed into the stream of commerce asbestos-containing products

6

and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products and/or raw asbestos-containing talc of various kinds and grades, either directly or indirectly to Plaintiff Patricia McElroy's places of employment and/or used by her personally.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.  Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.  Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because the parties to the suit are completely diverse in that none of the Defendants are citizens of the same state as Plaintiffs.  The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

18.     Plaintiffs have satisfied all conditions precedent to the filing of this action.

19.     All of the named Defendants listed on the caption are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute.  Each Defendant corporation does or in the past mined, manufactured, designed, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos-containing products and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products and/or raw asbestos-containing talc of various kinds and grades, which are or in the past were sold, distributed, and used in North Carolina.  As

7

mentioned above, Plaintiff Patricia McElroy was exposed to various asbestos-containing products and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products and/or raw asbestos-containing talc of various kinds and grades sold and distributed in North Carolina.

20.     All of the named Defendants listed on the caption have consented to this Court exercising personal jurisdiction over the Defendants.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

21.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

22.     At all material times, Defendants are or were miners, milling, manufacturers, distributors, processors, importers, converters, compounders, designers, and/or retailers of asbestos-containing products and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products and/or raw asbestos-containing talc of various kinds and grades, (hereinafter collectively referred to as "asbestos-containing products").

23.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, their asbestos-containing products to be placed in the stream of interstate commerce with the result that Defendants' asbestos-containing products came into use by, or were used by others in close proximity to, Plaintiff Patricia McElroy.

24. Throughout the course of her employment and through her personal use, Plaintiff Patricia McElroy was exposed to Defendants' asbestos-containing products, which exposure directly and proximately caused her to develop an illness known and designated as mesothelioma.

25. Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment had a duty to design, manufacture and sell their asbestos-containing products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff Patricia McElroy and foreseeable users, bystanders, and household members of the dangers and defects of Defendants' asbestos-containing products, which the Defendants created, knew, or within the exercise of reasonable care, should have known.

26. Plaintiff Patricia McElroy, through her personal use, and whose livelihood was dependent upon the work that she did, was required to work with and around and/or use asbestos-containing products that were manufactured, processed, designed, distributed, supplied and/or sold by Defendants, and Plaintiff Patricia McElroy was exposed to Defendants' asbestos-containing products. Defendants knew or should have known that persons using their wire, cables, soldering pads, talc and/or talcum powder products, such as Plaintiff Patricia McElroy, would be required to and would come into contact with and would work in close proximity to Defendants' asbestos-containing products, and fibers from said asbestos-containing products were frequently inhaled and ingested by Plaintiff Patricia McElroy.

27. Plaintiff Patricia McElroy sustained injuries caused by no fault of her own and which could not be avoided through the use of reasonable care. Plaintiff Patricia McElroy's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, designed, sold, supplied or otherwise put asbestos-containing products into the market and into the stream of interstate

commerce while they knew, or in the exercise of ordinary care should have known, that said asbestos-containing products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff Patricia McElroy's body, lungs, respiratory system, health, and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff Patricia McElroy would not know of such danger to her health.

28. Plaintiff Patricia McElroy's illness and/or disabilities are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known that Defendants' asbestos-containing products were deleterious, poisonous, and highly harmful to Plaintiff Patricia McElroy's body, lungs, respiratory system, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

(a) Failed to advise Plaintiff Patricia McElroy of the dangerous characteristics of Defendants' asbestos-containing products;

(b) Failed or omitted to provide Plaintiff Patricia McElroy with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect her from being poisoned and disabled as she was by exposure to Defendants' asbestos-containing products;

(c) Failed and omitted to place any warnings or sufficient warnings on Defendants' asbestos-containing products to warn users of the dangers to health in coming in contact with said products;

(d)    Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing Defendants' asbestos-containing products;

(e)    Inadequately warned, if in fact they warned at all, persons such as Plaintiff Patricia McElroy of the dangers to their health in coming in contact with and breathing said asbestos fibers from Defendants' asbestos-containing products;

(f)    Did not recommend methods to improve the work environment;

(g)    Did not develop alternative products;

(h)    Continued to use a known cancer-causing product, to-wit:  asbestos; and

(i)    After discovering that asbestos exposure caused a progressive lung disease, the Defendants did not inform Plaintiff Patricia McElroy of the need for monitoring and periodic evaluations up to and including the filing of this Complaint.

29.    Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' asbestos-containing products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' asbestos-containing products.  The products in question were defective at the time they left the control of the Defendants.

30.    Defendants were negligent and breached their duty of due care to Plaintiff Patricia McElroy by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff Patricia McElroy and other foreseeable users, bystanders and household members in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, and distribution of Defendants' asbestos-containing products at issue in the stream of commerce.

11

31.     The hazards posed by exposure to Defendants' asbestos-containing products and the resulting injuries and damages to Plaintiff Patricia McElroy were reasonably foreseeable to, or should have been reasonably foreseen by Defendants.

32.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Plaintiff Patricia McElroy developed mesothelioma as a consequence of which, through no fault of her own, she was severely injured, disabled and damaged.

33.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.


## SECOND CAUSE OF ACTION

## PRODUCT LIABILITY – INADEQUATE DESIGN, FORMULATION AND MANUFACTURE


32.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

33.     At all material times, Defendants were engaged in the mining, manufacture, distribution, design, supply, sale, assembly, production, construction, and/or specification of Defendants' asbestos-containing products.

34.     Defendants, acting through their agents, servants, and/or employees, placed in the stream of commerce asbestos-containing products designed, manufactured, distributed, marketed, and/or sold by Defendants that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses with the result that said asbestos-containing products came into use by Plaintiff Patricia McElroy, and fibers from said asbestos-containing products were frequently inhaled and ingested by Plaintiff Patricia McElroy.

12

35.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell Defendants' asbestos-containing products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff Patricia McElroy and foreseeable users, bystanders and household members of Defendants' asbestos-containing products of the dangers and defects which the Defendants created knew, or within the exercise of reasonable care, should have known.

36.     Defendants acted unreasonably in designing, manufacturing, and formulating their asbestos-containing products to be harmful to Plaintiff Patricia McElroy's body, lungs, respiratory system and health.  Defendants acted unreasonably in the following acts and/or omissions:

(a)     Failing to adopt a practical, feasible, and otherwise reasonable alternative design that was safer, that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm to individuals such as Plaintiff Patricia McElroy without substantially impairing the usefulness, practicality or desirability of Defendants' asbestos-containing products; and

(b)     Using a design that was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume Defendants' asbestos-containing products of this design; and

(c)     Allowing the use of talc that contains asbestos to be used in the manufacture of the products when said products were supposed to be asbestos-free.

37.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing their asbestos-containing products into the stream of commerce knew, or in the exercise of reasonable care should have known about the risks associated with said asbestos-

containing products. The products in question were defective at the time they left the control of the Defendants.

38.     Defendants' unreasonable acts in designing and manufacturing the herein aforementioned products distributed, sold and specified by Defendants were a proximate cause of Plaintiff Patricia McElroy's development of mesothelioma, as a consequence of which through no fault of her own, she was severely injured, disabled and damaged.

39.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

40.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

41.     The Defendants impliedly warranted that their asbestos-containing products were of good and merchantable quality and fit for their intended use.

42.     The implied warranty made by the Defendants that their asbestos-containing products were of good and merchantable quality and fit for the particular, intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere of Plaintiff Patricia McElroy while personally using and working with, or in the vicinity of, said asbestos-containing products.

43.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff Patricia McElroy developed an illness, to-wit: mesothelioma.

14

44.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## FOURTH CAUSE OF ACTION

## WILLFUL AND WANTON CONDUCT

45.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

46.     Plaintiff Patricia McElroy and others in her position personally using and working with and/or in close proximity to Defendants' asbestos-containing products, and the exposure and hazard to each of them in Plaintiff Patricia McElroy's presence as well as others in her position, was known, or in the exercise of reasonable care, should have been anticipated by the Defendants and each of them.

47.     The Defendants have known, or should have known, since at least 1929 of medical and scientific data which clearly indicates that Defendants' asbestos-containing products were hazardous to the health and safety of Plaintiff Patricia McElroy and others in the Plaintiff's position, and prompted by pecuniary motives the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, depriving them therefore of the opportunity of free choice as to whether or not to expose themselves to Defendants' asbestos-containing products.  As a result, Plaintiff Patricia McElroy was severely damaged as is set forth below.

48.     The Defendants intentionally continued to conceal the dangers of asbestos exposure from 1929 through at least the 1970's, thus denying Plaintiff Patricia McElroy the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations,

Case 5:21-cv-00179-FL   Document 1   Filed 04/20/21   Page 15 of 23

cessation of smoking, and avoidance of further dust exposure. Specifically, Defendants'
intentional, willful and wanton conduct included the following acts and omissions:

(a)     failure to warn prior users, bystanders and household members when the
        Defendants had knowledge of the need for monitoring due to prior exposure;

(b)     failure to issue recall type letters to prior users, bystanders and household
        members;

(c)     frustrating the publication of articles and literature from the 1930's through at least
        1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards
        of Defendants' asbestos-containing products; such rejection being motivated by the
        possibility of adverse effects on profits; and

(e)     delaying the use of and/or providing intentionally inadequate warnings on
        Defendants' asbestos-containing products.

49.     The acts and omissions of each of the Defendants as hereinabove set forth were
intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff Patricia
McElroy and others similarly situated at a time when each of the Defendants had knowledge, or
should have had knowledge of the dangerous effect of Defendants' asbestos-containing products
upon the body of human beings, including Plaintiff Patricia McElroy and others similarly situated,
and even though forewarned by tests, standards, promulgations of rules and regulations, statutes,
and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into
the stream of commerce for their own profit this dangerous asbestos material with full knowledge
that it was being used and would be used in the future to the detriment of the health of Plaintiff

Patricia McElroy and others similarly situated, and Plaintiffs are thereby entitled to punitive damages.

50.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of the users, consumers, and/or household members such as Plaintiff Patricia McElroy, Plaintiffs therefore seek exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of their products.

## FIFTH CAUSE OF ACTION

## FAILURE TO WARN

51.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

52.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with Defendants' asbestos-containing products and of exposures to inhalable asbestos.

53.     Defendants had a pre- and post-sale duty to warn household members of individuals including, but not limited to, Plaintiff Patricia McElroy of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

54.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' asbestos-containing products, the

Defendants failed to warn and/or inadequately warned Plaintiff Patricia McElroy of the dangers including, but not limited to:

(a) Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with Defendants' asbestos-containing products which should have been designed to provide to Plaintiff Patricia McElroy knowledge about the hazards caused by exposure to Defendants' asbestos-containing products and how to eliminate such hazards;

(b) Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with Defendants' asbestos-containing products which should have been designed to provide to Plaintiff Patricia McElroy knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(c) Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards to them and household members caused by exposure to the Defendants' asbestos-containing products, and how to eliminate the hazards;

(d) Failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Plaintiff Patricia McElroy;

(e) Failing to inspect the workplace in which Defendants' asbestos-containing products were being used to determine whether the products being used were deleterious to the health of exposed workers and household members of said workers;

(f) Failing to design, process and transport Defendants' asbestos-containing products in a manner intended to minimize exposure during personal use and normal working conditions;

(g) Failing to specify and market Defendants' asbestos-containing products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of Defendants' asbestos-containing products after it was known or should have been known that adequate protective measures were not being implemented;

(h) Failing to recall their defective products or manufacture a reasonably safer alternative;

(i) Failing to take adequate precautions and industrial hygiene measures to protect exposed workers such as Patricia McElroy and her family members, when personally using and/or working with Defendants' asbestos-containing products including, but not limited to, providing protection from dust and fibers emanating from use of Defendants' asbestos-containing products; failing to use local ventilation; failing to provide warnings to Plaintiff Patricia McElroy, her family members, and workers in the facilities at issue, that exposure to dust and fibers from Defendants' asbestos-containing products was hazardous and carcinogenic; failing to adequately clean up debris from the use of said products; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j) Otherwise failing to act reasonably under the totality of the circumstances.

55.     Defendants manufactured, processed and/or sold Defendants' asbestos-containing products, and these products were used by Plaintiff Patricia McElroy and her family members personally, and at Plaintiff Patricia McElroy's places of employment, or by workers around her during her employment, and these products were used by Plaintiff Patricia McElroy and her employers.  Thus, Defendants had a pre- and post-sale duty to warn individuals and household members personally using, and individuals working at jobsites of the dangers associated with the use and/or inhalation of dust and fibers from Defendants' asbestos-containing products.

56.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' asbestos-containing products, the Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to their products.  Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' asbestos-containing products to users, bystanders and/or household members.

57.     At the time Defendants' asbestos-containing products left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff Patricia McElroy.  In the alternative, after said asbestos-containing products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their products posed a substantial risk of harm to a reasonably foreseeable users and/or household members such as Plaintiff Patricia McElroy and her family members, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

58.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to Defendants' asbestos-containing products or to provide proper instructions on the use, handling, and storage of said asbestos-containing products caused Plaintiff Patricia McElroy to develop mesothelioma as a consequence of which she was injured and damaged, and Plaintiffs hereby make a claim for damages from the Defendants jointly and severally.

59.     As a result of the Defendants' failure to warn, Plaintiff Patricia McElroy suffered the injuries, illnesses, and/or damages hereinafter alleged.

## DAMAGES

## LOSS OF CONSORTIUM

65.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

66.     Plaintiffs Patricia McElroy and Stephen McElroy were married on June 4, 1966, and have remained married at all times material hereto.

67.     As a direct and proximate result of the injuries and damages complained of herein with respect to Plaintiff Patricia McElroy, and as a direct and proximate result of the acts and omissions of the Defendants, Plaintiff-Spouse Stephen McElroy has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of his wife; and therefore, Plaintiff-Spouse Stephen McElroy is entitled to damages for his loss of consortium, both past and future.

## **COMPENSATORY AND PUNITIVE DAMAGES**

68.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

69.     As a result of the above-alleged conduct of the Defendants, Plaintiff Patricia McElroy developed mesothelioma, as a consequence of which, she has been damaged as follows:

(a)     hospital and medical expenses incidental to Plaintiff Patricia McElroy's illness;

(b)     loss of earnings and future earning power of Plaintiff Patricia McElroy;

(e)     loss of Plaintiff Patricia McElroy's general health, strength, and vitality;

(c)     loss of pecuniary contributions to the heirs of Plaintiff Patricia McElroy;

(d)     loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Patricia McElroy;

(e)     future loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Patricia McElroy;

(f)     pain and suffering of Plaintiff Patricia McElroy;

(g)     all other damages recoverable under said Act.

WHEREFORE, the Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, conspiracy, and other breaches of duty, and willful, wanton, and malicious conduct as alleged herein proximately caused by the fault of the Defendants.  Plaintiffs pray for judgment against all Defendants for actual and punitive damages,

lost wages and special damages in an amount to be determined by the trier of fact, in excess of

$75,000.00 plus interest as provided by law and the costs of this action.

### **PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 20th day of April, 2021

/s/ Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiffs
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
Tel. 336-333-2244
Fax 336-510-2168
jwblack@wardblacklaw.com